## THE PERSEVERANCE.

## THE DUTCHESS.

(Circuit Court of Appeals, Second Circuit. March 26, 1926.)

Nos. 254, 255.

1. Collision ⊚⟶71(2)—Tug, which saw anchored canal boat and tow soon enough to keep clear, held at fault for collision of tug's tow therewith.

Tug, which saw canal boat and tow anchored in Hudson river channel soon enough to keep clear, held at fault for collision of tug's tow therewith.

2. Collision ⊚⟶74—Evidence held to show that anchored canal boat failed to show required signal, and hence was at fault for collision of tug's tow with it and its tow.

Evidence held to show that canal boat, anchored in Hudson river channel, failed to show black ball by day, as required by rules of supervising inspectors, and hence was at fault for collision of tug's tow with canal boat and its tow.

Appeals from the District Court of the United States for the Eastern District of New York.

Libels by the Wright & Cobb Lighterage Company, Inc., as owner of the barge Albert Ruyter, against the steam tug Perseverance, the Cornell Steamboat Company, claimant, impleaded with the steam canal boat Dutchess, the New York Canal & Great Lakes Corporation, claimant, and by the New York Canal & Great Lakes Corporation against the steam tug Perseverance, the Cornell Steamboat Company, claimant. From decrees against the steam tug, the claimant thereof appeals. Reversed and remanded, with directions.

Appeals from final decrees in admiralty entered in the District Court for the Eastern District of New York.

During the night of June 13-14, 1923, the steam canal boat Dutchess, on a voyage up the Hudson river, encountered fog, and for that reason anchored just below Haverstraw. She had 5 boats in tow, and, as is the custom with vessels of her kind, the flotilla was so arranged that it was, so to speak, solid around all of the Dutchess, except her stern. Thus she towed by pushing. She lay on the westward side of the channel, and, owing to the formation of her tow, her anchor was cast out astern, so that, when the tide ebbed, she headed down stream.

Shortly after daybreak, the tide being ebb, the Perseverance, with a tow of 28 boats in 7 tiers, came down with the tide; the tug and tow making 4 or 5 miles an hour. The whole length of tow and hawser was about 1,300 feet, and the master of the tug is sure that he saw the Dutchess about a mile off.

The master of the Perseverance recognized the Dutchess and tow for what they were, but, as they were headed down stream, on an ebb tide, the tug master thought the canal boat was under way and being overtaken by him.

Under this mistake the Perseverance continued until, being about 500 feet astern of the Dutchess, the sheer of the canal tow as it lay at anchor revealed the truth, whereupon the Perseverance attempted to haul to the eastward, but there was not room enough for that maneuver with so long a tow, and some of the boats were swept down by the tide against the Dutchess and her accompanying boats.

Various causes arose out of this collision, which were tried together. The Perseverance was held solely at fault, and her owner appealed.

Kirlin, Woolsey, Campbell, Hickok & Keating, of New York City (Robert S. Erskine and Henry P. Elliott, both of New York City, of counsel), for appellant.

Macklin, Brown & Van Wyck, of New York City (Paul Speer, of New York City, of counsel), for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] Although the evidence as to weather in the very early morning of June 4th is neither full nor altogether harmonious, we are satisfied that Perseverance saw Dutchess and her tow soon enough and long enough to keep clear, which was a duty incumbent on the tug, whether the canal boat was moving or moored. We therefore agree that Perseverance was at fault.

[2] But we are satisfied that Dutchess also was negligent. She had anchored in the

channel, wherefore prudence and common sense taught that extreme care should be exercised in warning other vessels using that channel. It is admitted that a then recent rule of the supervising inspectors required vessels anchored as was the Dutchess to show a black ball by day, indicating that she was anchored. Whether this ball was in fact displayed is the contested point in this case.

The lower court held that it was, and the master and mate of Dutchess so swore. Indeed, the mate swore once that he put it up at daybreak, and at another time that he raised the ball when he saw the Perseverance approaching, which was some hours after daybreak. Again, the mate is clear that he went to the locker and got the ball out for service, while the master is equally clear that he had gotten the ball out and had it ready at 1 a. m. The evidence from the Perseverance is direct that there was no ball displayed. What in our opinion turns the scale is the undoubted fact that the master did not mention the display of any ball in his report to the local inspectors, nor in his testimony before them did he claim to have displayed one, though the inspectors called his attention to the rule as so recent that he had perhaps overlooked it. In short, we wholly disbelieve the evidence of master and mate on this point, and are of opinion that, had a ball been displayed, the master of Perseverance, who saw Dutchess a mile off, would have known of her immobility in time to go clear.

Decrees reversed, with costs to appellant, and causes remanded, with directions to enter new decrees holding Perseverance and Dutchess at fault. Costs of lower court to be adjusted by that court.